UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FRAGOMEN, DEL REY, BERNSEN & LOEWY LLP,** 1101 15th Street, N.W., Washington, D.C. 20005, | ) ) ) ) ) ) | Civ. No. _____ **COMPLAINT** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **ELAINE L. CHAO, Secretary of Labor, and the U.S. DEPARTMENT OF LABOR,** 200 Constitution Avenue, N.W. Washington, D.C. 20210, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## NATURE OF THE ACTION

1.      This is an action to invalidate, rescind, and permanently enjoin actions by the United States Department of Labor ("Department" or "DOL").  In the last two months, the Department has banned attorney-client consultations about specialized questions of immigration law, and has attempted to bias the advice attorneys must give their clients when confronted with questions about the permanent labor certification program administered by the Department's Office of Foreign Labor Certification.

2.      To remain competitive in the global marketplace, U.S. employers looking for the most qualified professionals to run their businesses sometimes find it advantageous to hire skilled foreign nationals for some positions.  Under Section 212(a)(5) of the Immigration

and Nationality Act ("INA"), U.S. employers may hire foreign nationals for a permanent position if they can obtain from the Department, after testing the U.S. labor market, a certification that there are not enough workers in the United States who are "able, willing, qualified … and available" to fill the position.

3.    To implement the statute, the Department has promulgated regulations that establish rules governing applications for such certifications, including rules for evaluating whether a U.S. applicant for a position is "qualified."  Being "qualified" under the Department's regulations does not mean that the applicant is the best qualified person to do the job; in this regulatory context, it means that the applicant is "minimally qualified" to perform the functions of the job.  The Department's regulations also provide that employers may be represented by counsel "throughout the labor certification process."  20 C.F.R. § 650.10(b)(1).  Experienced and knowledgeable immigration attorneys help employers navigate and comply with this often confusing and complicated process.

4.    The Department has recently announced a radical and unprecedented new interpretation of its regulations.  The Department now is attempting to dictate both when employers can consult with their lawyers and what advice the lawyers can give.  The direct consequence of this effort is that employers attempting to comply with both the letter and the Department's interpretation of the regulations will be intimidated into taking actions without first obtaining the guidance they believe they need from their immigration attorneys.

5.    Specifically, the Department now asserts that during recruitment conducted for a labor certification application, an employer in some situations may not consult with its counsel about whether particular applicants for a position are "qualified" under the

complicated criteria established by the regulations, which deviate substantially from normal hiring standards.

6.      Under the Department's new view, if the employer makes a preliminary assessment that an applicant appears *qualified*, then – according to the Department – consultation by the employer with its attorney is forbidden.  However, if the employer makes a preliminary assessment that an applicant appears *unqualified*, the employer may consult with an attorney to ensure that the employer's assessment is fully consistent with the criteria in the regulations.  The Department thus has imposed a content-based and viewpoint-based restriction on attorney-client communication.  The Department has also decreed that attorneys retained by employers may not review applicant résumés when they are received and communicate with their clients at that time about whether particular applicants may be "qualified" under the regulations.

7.      Based on its new interpretation of the regulations, the Department announced a 100 percent audit of all labor certification applications filed by Plaintiff on behalf of its clients.

8.      The Department's actions exceed its statutory authority, violate the Constitutional rights of employers to consult with their counsel and of counsel to provide advice to their clients, and contravene the regulation the Department purports to be implementing.  These actions also seek to force attorneys to breach ethical duties they owe to clients, violate Plaintiff's due process right to pursue its vocation, and depart from decades of settled practice in the immigration bar.  In addition, the Department promulgated its new interpretation without notice and an opportunity for comment, in violation of basic rulemaking requirements established by the Administrative Procedure Act ("APA").

9.     For the reasons explained below, unless the Court grants injunctive relief to prevent the Department from enforcing its unlawful interpretation of the regulations, Plaintiff will suffer immediate and irreparable injury.

## PARTIES

10.     Plaintiff Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen") is one of the nation's leading providers of business-related legal representation to corporate clients. Founded in 1951, Fragomen now has over 250 attorneys and over 1,000 professional immigration specialists and staff located in more than 30 offices in the Americas, Asia, and Europe.   More than 200 Fragomen attorneys work in 15 offices across the United States, including in Washington, D.C.  Fragomen works with its clients to facilitate the hiring and transfer of employees worldwide.   Fragomen's comprehensive U.S. immigration and visa services include preparation of temporary visa petitions and applications for permanent residence, immigration policy guidance, strategic planning advice, program support, and counseling and representation on compliance issues.

11.     Many Fragomen attorneys have previously served in key positions with government agencies involved with immigration, including Counsel to the Immigration Subcommittee of the U.S. House of Representatives; Director of Information for the American Immigration Lawyers' Association; Legal Advisor to the Advisory Opinion Office of the U.S. Department of State; Counsel to the Department of Labor's Board of Alien Labor Certification Appeals; Chief of the Immigration Unit of the United States Attorney's Office for the Southern District of New York; District Counsel for the former Immigration and Naturalization Service; Assistant District Counsel and Acting Deputy District Counsel for the Immigration & Naturalization Service, New York District; Attorney Advisor for the New York Immigration

Court; and District Adjudication Officer for the United States Citizenship and Immigration Services (USCIS).

12.     Fragomen's reputation as the country's leading immigration law practice has been recognized in many publications, including (a) *The International Who's Who of Business Lawyers,* which has named Fragomen the Global Corporate Immigration Law Firm of the Year for the past four consecutive years; (b) *Best Lawyers in America*, which has ranked Fragomen as the number one firm in the United States in immigration law; and (c) *Chambers*, which gave Fragomen the highest possible ranking in the immigration category.

13.     As a provider of immigration-related legal services, Fragomen files many applications for permanent labor certification with the Department.   In the last 12 months, Fragomen has filed more than 6,500 labor certification applications on behalf of its clients.

14.     In addition, as an employer with immigration issues like other employers, Fragomen is also a labor certification sponsor in its own right, and is a client of other immigration lawyers.

15.     Defendant Elaine L. Chao is the Secretary of Labor ("Secretary") at the United States Department of Labor.  The Secretary is responsible for administering INA Section 212 and the implementing regulations.

16.     The Department of Labor is named as a defendant herein in accordance with the waiver of sovereign immunity in 5 U.S.C. § 702 in order to facilitate the proper effectuation of the equitable relief Fragomen seeks.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this case pursuant to 5 U.S.C. § 702 and 28 U.S.C. §§ 1331 and 1346(a)(2).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) in that a defendant resides in this District.

19.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02, Rule 57 of the Federal Rules of Civil Procedure, and other applicable law.

20.     As explained below, this case raises a concrete legal dispute over the interpretation of a final rule promulgated by the Department and the validity of that rule in light of the Department's interpretation. The effects of the Department's actions have been felt in a concrete way by Fragomen and its clients and have caused irreparable harm. The Department's actions have already had, and will continue to have, a material impact on Fragomen's ability to provide critical services to its clients and to continue doing business as an immigration law firm, and on the ability of Fragomen and its clients to obtain legal advice so that they can, in compliance with federal law, follow the Department's regulatory rules in applying for labor certifications.

## BACKGROUND

### Overview of the Labor Certification Process

21.     Under INA Section 212(a)(5), 8 U.S.C. § 1182(a)(5), an employer who wishes to hire a foreign national for a permanent position must obtain a certification from the Secretary that there are not workers in the United States who are "able, willing, qualified … and available" for the position. This requirement has existed since 1965 (Pub. L. No. 89-236, 79 Stat. 911, Oct. 3, 1965). An employer must thereafter obtain approval to hire the foreign national from the United States Citizenship and Immigration Services ("USCIS").

22.     The Department has promulgated regulations, codified in Title 20 of the Code of Federal Regulations, to implement the statute. The regulations explain that employers

must engage in recruitment efforts to test the U.S. labor market and determine whether any qualified workers are available for the position before they proceed with a labor certification application. The regulations address, among other issues, what types of recruitment measures must be undertaken, and what standards the employer must use to evaluate whether a U.S. applicant for a position is "qualified" for purposes of a labor certification.

23. The regulations seek to ensure that the recruitment process will be conducted in good faith, and that employers will not create a sham recruitment process that is calculated to find all U.S. workers unqualified. However, the regulations also require employers to apply a meaning of "qualified" that differs substantially from the standards employers typically use in determining whether they actually will offer a job to an applicant.

24. For example, for labor certification purposes, an applicant is "qualified" if he or she meets the "**minimum**," objectively measurable requirements specified in an official job description, such as the required type of educational degree or the required minimum number of years of experience with a specific demonstrated skill. 20 C.F.R. § 656.17(i). The labor certification standards focus on "minimum" ability to fill a position even though in normal business practice most companies are not looking to hire someone "minimally" competent, but rather look for the most qualified individual.

25. Under the Department's labor certification regulations, during the recruitment process an employer may not list all of the educational and experience requirements that may be relevant for the position, absent a showing of unusual "business necessity." The employer typically may only list those requirements that are established through a highly complex formula set forth in the Department's computerized database – O*Net – based on specifically defined job titles and vocational preference systems. The formula used to determine

the job requirements listed in the job posting must be described on the application submitted to the Department, and the Department views even the most minor typographical error on the form as a basis to deny the application.

26.     A U.S. worker who meets the bare minimum criteria for the position may be viewed as "qualified" even if his or her credentials are demonstrably inferior to the credentials of the foreign national the employer wishes to sponsor.  For example, if the U.S. applicant finished last in his class academically at a poorly regarded university and the foreign national finished first in his class at a prestigious university, but both received the same degree, this would not be a basis for finding that the U.S. applicant is not "qualified" under the regulations for purposes of a degree requirement.  Employers also must treat as "qualified" a U.S. applicant who does not yet have the minimum skills necessary for the position but could acquire them in a reasonable period of time through on-the-job training.  20 C.F.R. § 656.17(g)(2). The regulations do not provide explicit guidance as to what a "reasonable" period of on-the-job training would be.  An employer also may not disqualify a worker who has a degree that is "equivalent" to the one required, or a degree in a substantially similar field.

27.     The labor certification process recognizes that there may be circumstances where a job applicant otherwise deemed minimally qualified under DOL regulations may be rejected because there are "inherent job requirements."  These requirements may take into account (for example) lack of trustworthiness, lack of proficiency in English, poor references, smoking, and demonstrable incompetence at the interview.  But "inherent job requirements" generally may not take into account common characteristics such as work ethic, attitude, or personality.  *See, e.g.,* Board of Labor Certification Appeals Deskbook § 23.33.

28.     The labor certification process thus requires employers to apply complicated and unfamiliar criteria for evaluating applicants. It is often the case that an applicant who is "qualified" for purposes of this process is not a person the employer would be interested in hiring. It is also often the case that an applicant who is "qualified" under the procedure set forth in DOL regulations nevertheless may be rejected if an "inherent job requirement" is accepted by the DOL. Moreover, whether the applicant is "qualified" is only one of the many legal questions presented in the context of any given application. A job applicant must not only be "minimally qualified" for the position; he must also be "able, willing … and available" for the position.

**The Importance of Legal Advice in the Labor Certification Process**

29.     Employers have a legitimate and important need for advice from counsel in order to understand, navigate, and fully comply with the requirements of the labor certification process.

30.     The labor certification process was designed to test the employment market to determine whether a foreign national may be certified for permanent employment. **There is no requirement in the statute or the regulations that an employer hire U.S. workers, even if a U.S. applicant is determined to be "qualified."** During the recruitment process, if the employer determines that a U.S. worker who applies for the position is "qualified" and is "able, willing, … and available" under the criteria established by the regulations, the employer may – but is not required to – offer that worker the job.

31.     Because the decision about whether a given job applicant is "qualified" is governed not by normal considerations of suitability for hiring but instead by the dictates of the

labor certification regulations, that decision ultimately is a specialized legal judgment rather than a normal hiring decision. Employers therefore rely on their attorneys to assist them in getting their decisions right. Immigration lawyers historically have advised their clients about matters such as: (1) whether the education and experience requirements and job description are consistent with the Department's complex formulas and regulations; (2) whether a job applicant, based upon his or her résumé appears to meet the basic requirements for the position construed in light of the DOL regulations, and therefore must be contacted and possibly interviewed; (3) whether an applicant who appears minimally qualified under DOL regulations may be found ineligible subsequent to an interview because of inherent job requirements; (4) whether a job applicant's degree would be viewed by the DOL as equivalent to the degree sought by the employer thereby making the applicant minimally qualified for the job; (5) whether DOL's regulations and precedent would deem an applicant minimally qualified because he or she could receive on-the-job training; and (6) whether an applicant who appears to be "qualified" also meets the three other criteria required under the statute, *i.e.*, "able, willing, ... and available."

32.    Employers also rely heavily on counsel to guide them through (among other matters) special requirements imposed by the regulations for applications by employers who have had layoffs, and strict timelines for the completion of required tasks, such as placing advertisements, interviewing applicants, and submitting applications that are not in conformance with normal business practices. In light of the strict timelines, it is typical for an employer to obtain legal advice throughout the recruitment process.

33.    An employer may appeal an adverse determination by the Department on a particular labor certification application to the Board of Labor Certification Appeals ("BALCA"). BALCA, the Department's own administrative court, has confirmed in decisions

issued during the past 20 years that employers have a right to consult with their counsel in navigating the labor certification process. This view has also been embraced repeatedly in official Department guidance documents, and has long been understood by experienced labor certification practitioners.

34. For example, BALCA recently described the Department's labor certification program as "an exacting process, and unforgiving of mistakes in filling out the application or misunderstandings about the regulatory requirements." *In re Robinson*, 2007-PER-00084 (BALCA 2007). In that case, BALCA expressly advised an employer that, "[g]iven the legal requirements of the labor certification process, [the employer] might consider engaging an immigration attorney to assist her in understanding and complying with the regulations." *Id.*

**The PERM Program**

35. On May 6, 2002, the Department issued a Notice of Proposed Rulemaking in which it proposed a new system to expedite the processing of labor certification applications: Program Electronic Review Management or "PERM." *See* 67 Fed. Reg. 30466 (May 6, 2002) (the "PERM Notice"). Under the regulations proposed in the PERM Notice, applications for a labor certification would be filed electronically with an attestation by the employer that it complied with the Department's recruitment requirements but without physically attaching voluminous supporting documentation. The requirements for the labor certification process, however, became even more complex. Traditional issues regarding the permissible range of experience and education for a "qualified" worker remained in force. Legal criteria involving when a job was "unduly restrictive," involved dual occupations, or could be justified by "business necessity" remained. The determination of alternate job requirements and when a

candidate could be considered for on-the-job training similarly remained in force. So too, did the legal determination of when an applicant would be considered "minimally qualified" and when résumés had to be reviewed and considered by the employer.

36.    The PERM process, however, added a new layer of complexity by requiring a complicated formula for various submissions to the Department, new deadlines for pre-recruitment efforts, different formulas for advertising and recruitment, and a complex computerized system for determining the appropriate experience and education for a particular position. Even the submission of PERM's electronic application requires the involvement of legal counsel – the Department has taken the position that a typographical error or an inadvertent omission in the application is sufficient to invalidate the application, thereby wasting months of expensive prescribed recruitment efforts.

37.    After filing of an application by the employer, the Department retains the authority to select some cases for "audit":

> After an application … has been determined to be acceptable for
> filing, a computer system will review the application based upon
> various selection criteria that will allow more problematic
> applications to be identified for audit. Additionally, we anticipate
> that some applications will be randomly selected for an audit
> without regard to the results of the computer analysis as a quality
> control measure.

PERM Notice, 67 Fed. Reg. at 30467. In the event of an audit, the employer would submit materials supporting the application, and the Department would evaluate the application on the merits.

38.    Although the primary objective of PERM and the audit system was to streamline the application process by eliminating the need to review extensive documentation for

each and every application, the audit process could easily undermine any streamlining. One unintended consequence of this system was to open an enormous gap in the processing times for labor certification applications, depending upon whether the application was selected for audit or not. The PERM Notice stated the Department's expectation that applications not selected for audit generally would be processed within 21 days. 67 Fed. Reg. at 30467. However, if an application is selected for audit, the timetable slows down dramatically. In actual practice under the PERM system, applications that are designated for audit frequently take longer than a year to process. At a July 15, 2008 "Stakeholders" public meeting, the Department announced that it was "currently working on audited cases with priority dates of March 2007," thus recognizing a minimum 16-month delay. Accordingly, although the designation of a particular application for audit was intended as an administrative safeguard to ensure that employers' attestations were true and correct, under current practice an audit designation effectively puts an application into limbo for a protracted period of time.

39.    The additional delay caused by an audit may result in exhaustion of the maximum duration of non-immigrant status for a foreign national, possibly leading the employer to lose a critical employee. The delay may also create other difficulties. For example, it may be important for the employee to have permanent resident status to travel internationally or to acquire a security clearance. In some cases, the foreign national must become a permanent resident to sponsor a spouse or to secure permanent residence for a child. PERM processing delays may also force the employer to incur additional expenses to secure extensions and visas for the foreign national abroad.

40.    The PERM Notice also proposed a re-codification of many pre-existing regulations addressing recruitment requirements. Among these was 20 C.F.R. § 656.10(b) (the

"Regulation"), which includes a series of sub-parts that address the issue of "Representation." The first paragraph of the Regulation affirms the right of employers to be represented by their own counsel "*throughout* the labor certification process." 20 C.F.R. § 656.10(b)(1) (emphasis added).

       41.    The Notice also proposed to carry forward certain policies designed to minimize the influence of alien beneficiaries who would have an incentive to discourage the qualifiability of U.S. workers. *See, e.g.,* 67 Fed. Reg. at 30474 (devoting a section of the PERM Notice to "Alien Influence Over Job Opportunity"). *See also* 67 Fed. Reg. at 30476 (changing rules to eliminate alien's right of appeal and allow appeals only by employers). In the same vein, the PERM Notice proposed to retain without change a decades-old restriction on the extent to which *aliens* and their agents or attorneys could be involved in the recruitment process:

> (i) It is contrary to the best interests of U.S. workers to have *the alien and/or agents or attorneys for the alien* participate in interviewing or considering U.S. workers for the job offered the alien. As the beneficiary of a labor certification application, *the alien* cannot represent the best interests of U.S. workers in the job opportunity. *The alien's agent and/or attorney* can not represent the alien effectively and at the same time truly be seeking U.S. workers for the job opportunity. Therefore, *the alien and/or the alien's agent and/or attorney* may not interview or consider U.S. workers for the job offered to the alien, unless the agent and/or attorney is the employer's representative, as described in paragraph (b)(2)(ii) of this section.
>
> (ii) The employer's representative who interviews or considers U.S. workers for the job offered to the alien must be the person who normally interviews or considers, on behalf of the employer, applicants for job opportunities such as that offered the alien, but which do not involve labor certifications.

67 Fed. Reg. at 30494 (proposed text of § 656.10(b)(2)) (emphasis added).

42.     The PERM Notice provided for a 60-day comment period, during which a significant number of interested parties submitted comments.  None of the comments addressed the scope of the employer's right to counsel, presumably because (as the Department later noted) "[t]he NPRM did not propose any modifications to the provision in the current regulation at 20 CFR 656.20(b)(1) (found in this final rule at 656.10) that allows employers and aliens to be represented by agents or attorneys."  69 Fed. Reg. 77326, 77336 (Dec. 27, 2004) (the "PERM Final Rule").

43.     Two commenters did suggest that attorneys should be the *only* people authorized to help employers through the labor certification process – that is, non-attorney "agents" should no longer be allowed to do so – but the Department declined to act on this suggestion because it would have been "a major departure from our longstanding practice allowing representation by attorneys and agents."  69 Fed. Reg. at 77336.  The PERM Final Rule contained no other discussion of attorney representation.

44.     However, when the final version of 20 C.F.R. § 656.10(b)(2)(i) was published, the Department inserted additional words (emphasized below) that had not appeared in the proposed rule:

> It is contrary to the best interests of U.S. workers to have the alien and/or agents or attorneys for ***either the employer or*** the alien participate in interviewing or considering U.S. workers for the job offered the alien.  As the beneficiary of a labor certification application, the alien can not represent the best interests of U.S. workers in the job opportunity.  The alien's agent and/or attorney can not represent the alien effectively and at the same time truly be seeking U.S. workers for the job opportunity.  Therefore, the alien and/or the alien's agent and/or attorney may not interview or consider U.S. workers for the job offered to the alien, unless the

agent and/or attorney is the employer's representative, as described
in paragraph (b)(2)(ii) of this section.

The four words emphasized above – "either the employer or" – were inserted without prior
notice into one of the provisions aimed at avoiding undue *alien* influence over the labor
certification process, without any analysis of the key differences between employers and aliens.
These four words are the *only* reference to employers' attorneys in the final version of the
Regulation.  These four words were not included in either the pre-PERM version of this rule, or
in the recodified version of the rule proposed in May 2002.  The Department added these words
to the final version of the rule without any notice or explanation, and without affording interested
parties an opportunity for comment, contrary to the normal requirements of the Administrative
Procedure Act, 5 U.S.C. § 553.

      45.     Even with the four extra words, this sole reference to employers' attorneys
does not prohibit any action by an employer's attorney in the course of the attorney-client
relationship.  The only express prohibition in this provision – which appears in the last sentence
quoted above, and limits "interviewing or considering U.S. workers" – applies only to *aliens* and
the *aliens'* agents or attorneys.

## THE EVENTS LEADING TO THIS LAWSUIT

### The Department's Restriction Denying the Right to Counsel

      46.     Fragomen has been advising its clients about the PERM process since the
program's inception in 2005.  In some cases, some Fragomen lawyers have prepared forms for
clients to use to document their evaluations of job applicants who respond to the mandatory
recruitment effort that precedes the filing of a PERM application.  Fragomen voluntarily
produced three such forms, attached to this complaint as Exhibits A, B, and C, in response to

routine DOL audits of labor certification applications.  These three forms are not identical, but each contains a statement advising clients to call their Fragomen lawyer if the recruitment process produces a job applicant who appears to the client to be "qualified."  Such consultation permits Fragomen and the client representative to discuss the applicant's qualifications in light of the governing law on the meaning of "qualified" for labor certification purposes, as well as the other legal standards ("able, willing, … and available"), BALCA precedent decisions, DOL memoranda, and other guidance from DOL, and to discuss possible next steps under the law.

47.    On or about May 7, 2008, a meeting took place at the Department in Washington, D.C., at the request of the Department, between representatives of the Department and certain attorneys from Fragomen.  At that meeting, representatives of the Department produced copies of Exhibits A, B, and C (without prior notice) and asked the Fragomen attorneys what they "made of this."  The Department expressed concern that these papers suggested Fragomen had engaged in a "pattern or practice" of unlawful behavior by communicating with clients who believed they had found qualified U.S. job applicants.

48.    At a second meeting at the Department held on May 19, 2008, the Solicitor of the Department told representatives of Fragomen that he could not understand why an employer would want or need to speak with an attorney after forming an opinion that a U.S. job applicant was "qualified" for purposes of the labor certification process.

49.    A third meeting with the Department regarding Exhibits A, B, and C was scheduled for Friday, June 6, 2008.  However, on June 2 – several days prior to the scheduled meeting – the Department issued a press release (the "June 2 Press Release") announcing that DOL had begun to audit *all* permanent labor certification applications filed by Fragomen on behalf of all of the firm's clients.  The release further stated that the Department was taking this

action because it had "information indicating that in at least some cases the firm improperly instructed clients who filed permanent labor certification applications to contact their attorney before hiring apparently qualified U.S. workers." A copy of the June 2 Press Release, obtained from the Department's web site, is attached as Exhibit D. On information and belief, the "information" that triggered the audits announced in Exhibit D was nothing more than Exhibits A, B, and C. On information and belief, the Department has no factual evidence that Fragomen lawyers ever interfered with an employer's decision to hire anyone.

50.     The June 2 Press Release also announced a new and textually implausible interpretation of the Department's regulations on the role of counsel in the labor certification process:

> The department's regulations *specifically prohibit an employer's immigration attorney or agent from participating in considering the qualifications of U.S. workers* who apply for positions for which certification is sought, unless the attorney is normally involved in the employer's routine hiring process. Where an employer does not normally involve immigration attorneys in its hiring process, there is *no legitimate reason to consult with immigration attorneys* before hiring apparently qualified U.S. workers who have responded to recruitment required by the permanent labor certification program.

Exhibit D (emphasis added). This statement flatly contradicted the express assurance in section 656.10(b)(1) that employers may be represented by counsel "throughout the labor certification process," as well as years of BALCA decisions and other agency guidance on the role of attorneys in that process. There was no basis whatsoever for the Department's assertion that the need to resolve a live question of immigration law does not constitute a "legitimate reason to consult with an immigration attorney."

- 18 -

51.     The Department declared its intention to audit all 2,500+ cases filed by Fragomen without any individualized determinations as to whether particular applications filed on behalf of particular clients or by particular Fragomen attorneys involved a use of the forms to which the Department objects.  Indeed, on information and belief, the Department sent all pending Fragomen cases to audit without even completing the particular audits in which Exhibits A, B, and C were submitted.  In almost all cases, the responses to the audit notices mentioned in the press release were not yet even due at the time the June 2 Press Release was issued.  In essence, the Department was applying a special rule that if an employer uses a law firm that does anything that might justify an audit in any case for any client, then all cases handled by that law firm for all clients will be subject to automatic audits.   The decision also was a public announcement of a new rule, to be applied retroactively, banning attorney-client consultations at a critical stage of the regulatory process.

52.     In its press release, the Department singled out Fragomen, and therefore also the employers Fragomen represents, even though the Department was purporting to announce a rule of general applicability for PERM applications, and even though the Department was challenging settled practices and understandings that are widely shared in the immigration bar.   The injurious effects of the Department's unlawful conduct have materially and disproportionately damaged the business operations and professional standing of Fragomen.

**The June 4 Information Paper**

53.     Just one day later, in response to an outcry from stunned employers and members of the immigration bar, the Department issued an "Information Paper."   (The Information Paper was released on June 3, but was dated June 4, so it will be referred to herein

as the "June 4 Information Paper.")   This document set forth answers to what the Department

claimed were "Frequently Asked Questions" about the June 2 Press Release.   The June 4

Information Paper included the following statement (emphasis added):

> The Department's **regulations specifically prohibit an employer's immigration attorney or agent** from participating in considering the qualifications of U.S. workers who apply for positions for which certification is sought, unless the attorney is normally involved in the employer's routine hiring process.   Where an employer does not normally involve immigration attorneys in its hiring process, there is **no legitimate reason to consult with immigration attorneys** before hiring apparently qualified U.S. workers who have responded to recruitment required by the permanent labor certification program.   The Department's rule safeguards against the use of attorneys to find reasons not to hire U.S. workers that the employer would, but for the attorney's involvement, deem qualified.   *The rule applies only to consideration of particular applicants, and does not bar employers from seeking general advice on the meaning of "qualified" in the context of a labor certification application.*

A copy of the June 4 Information Paper is attached hereto as Exhibit E.

54.     The June 4 Information Paper recited some of the same misstatements of

the law that were contained in the June 2 Press Release.   The Information Paper added the new

assertion that attorneys may provide "general advice" to an employer about the meaning of the

term "qualified" under the PERM regulations, but are forbidden from advising on whether the

facts and credentials presented by any "particular applicant" meet the legal criteria under the

Department's regulations for being "qualified."   This pronouncement thus purported to regulate

the content and timing of the legal advice that attorneys could provide to employer clients during

the PERM process.   This rule, like the rule announced in the June 2 Press Release, lacked any

support in the regulations or the authorizing statute, and was contrary to established practice and past agency guidance.

**The June 13 Program Guidance Bulletin**

55.     On Friday, June 13, 2008, the Department changed course again when it released a PERM Program Guidance Bulletin (the "June 13 Bulletin") entitled "Clarification of Scope of Consideration Rule in 20 CFR 656.10(b)(2)."   A copy of the June 13 Bulletin is attached as Exhibit F.  While the June 4 Information Paper purported to ban *all* attorney-client consultations about whether "particular applicants" are "qualified" under the regulations, the June 13 Bulletin announced an overtly viewpoint-based restriction on attorney-client communications.  The June 13 Bulletin states, in pertinent part:

> After an employer evaluates a U.S. worker and concludes that the worker is **unqualified, the employer may seek the advice** of its attorney or agent to ensure that its reasons for rejecting the U.S. worker are lawful, and the attorney or agent may review the qualifications of the U.S. worker to the extent necessary to provide that advice.  By contrast, if an employer evaluates a U.S. worker and determines that the worker is **minimally qualified, the attorney, agent, or foreign worker may not thereafter consider the applicants' qualifications** and attempt to substitute his or her own judgment for that of the employer.

Exhibit F (emphasis added).  This interpretation prohibits an attorney from offering his or her legal opinion of whether the employer has properly applied the criteria in the regulations concerning the meaning of "qualified," but only if the employer's initial assessment is that the applicant is qualified.  If the employer makes the opposite initial assessment, the employer has a protected right to receive legal advice on precisely the same issue.

56.     In other words, under the Department's view of its regulatory power, if an employer's hiring manager concludes tentatively that a given applicant may be "minimally qualified" under the Department's peculiar and counter-intuitive meaning of the word, he may *not* consult with his lawyer to determine whether he is applying the law correctly.

57.     The June 13 Bulletin also ignored essential elements of the statute upon which the Department's authority is based.  Under the statute, the test for a labor certification turns on whether there are U.S. workers who are "able, willing, qualified … and available" for the position.  8 U.S.C. § 1182(a)(5).  But the June 13 Bulletin stated: "In the Department's view, an employer's determination that a U.S. worker is minimally qualified for a position constitutes clear evidence that there are U.S. workers who are able, willing, qualified and available for the work to be undertaken."  Thus, the June 13 Bulletin sought to stifle any further attorney-client consultation about whether the labor certification can still be pursued after there is a preliminary assessment by the employer that an applicant is "qualified," without regard to whether the applicant also is "able, willing, … and available" for the position.

58.     The June 13 Bulletin also decreed that attorneys for an employer may not conduct any preliminary screening of résumés received by an employer in connection with a PERM recruitment process.  According to the Department, at the time résumés initially are received, attorneys are forbidden from giving advice to their clients about whether particular applicants may be "qualified" within the meaning of the regulations.  Through this interpretation, the Department attempted to dictate at what point and in what form the employer obtains legal advice, and to prohibit attorney-client communication about the application of immigration law rules to particular facts.

59.    The Department's prohibitions on attorney consultation in the context of résumé screening, like the other new restrictions announced in the June 2 Press Release and the June 4 Information Paper, find no support in the text of section 656.10(b) or in the Immigration and Nationality Act.

**The Department's Demands for Information**

60.    The Department also sought to compromise the attorney-client relationship by sending correspondence demanding that Fragomen reveal information about whether lawyers or paralegals in the various Fragomen U.S. offices have advised clients on the screening of résumés in PERM cases. Fragomen objected to these inquiries, pointing out that the Department's request effectively asks Fragomen to violate its ethical obligations to its clients. The Department has threatened to institute debarment proceedings or impose other sanctions on Fragomen if it fails to comply with the Department's improper requests.

**The July 16 Agreement and the Certification**

61.    The Department's actions posed catastrophic risks to Fragomen's business, and a risk of serious disruptions to its clients' ongoing business affairs. Because of those risks, Fragomen was compelled to enter into an agreement with the Department that became effective on July 16, 2008 (the "July 16 Agreement"). In order to obtain the Department's assurance that it would satisfy itself with auditing the 2,500+ cases already under the shadow of the June 2 Press Release, and would not automatically audit all future Fragomen cases, Fragomen was required to promise the Department that it would comply with the unlawful regulatory constraints announced in the June 13 Bulletin until such time as a court determines the

issues raised by the Department's actions.  A copy of the July 16 Agreement between Fragomen and the Department is attached as Exhibit G.

62.    In addition, on July 31, 2008, the Department approved a form of "Certification" that Fragomen clients may submit in an effort to remove some of their cases from the Department's 2,500+ Fragomen special audits.  A copy of the approved Certification form is attached hereto as Exhibit H.  The Certification requires employers to attest, among things, that in the course of recruitment for their PERM applications, they did not have any of the types of consultations with Fragomen attorneys that are now viewed as prohibited.    Thus the Certification, like the July 16 Agreement, reflects the Department's continuing insistence that labor certification applications adhere to the restrictions that Fragomen is challenging as unlawful.

**The Department Seeks to Prevent Lawyers from Fulfilling Important Ethical Obligations**

63.    The Department's actions also constitute an unwarranted and inappropriate interference with the ethical duties imposed on attorneys by professional responsibility rules.

64.    Lawyers owe their clients independent judgment and candid advice.  *See, e.g.,* D.C. Rules of Professional Conduct, Rule 2.1.  By purporting to authorize lawyers to give only one of two possible answers to a client's inquiries, the Department's rules force Fragomen and other lawyers to choose between discharging their professional responsibilities or complying with the Department's spurious rules.

65.    Lawyers have a duty to represent their clients zealously and diligently within the bounds of the law; they may not fail to seek the lawful objectives of a client through



reasonably available means permitted by law and the disciplinary rules.  *See, e.g.,* D.C. Rules of Professional Conduct, Rule 1.3.  If a lawyer knows that his client is legally permitted to pursue his lawful objectives, but the client mistakenly believes otherwise, the lawyer has an obligation to make sure the client understands his rights under the law.  Deferring to a lay client's unschooled and possibly erroneous view is inconsistent with these obligations.  The Department's new constraints on the attorney-client relationship place Fragomen lawyers and other ethical attorneys on the horns of a dilemma.  The Department's restrictions seek to forbid attorneys from doing what professional responsibility rules obligate them to do.

66.    Lawyers have a duty to explain legal matters to their clients to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.  *See, e.g.*, D.C. Rules of Professional Conduct, Rule 1.4.  An attorney's communication with his client must be comprehensive, to ensure that decisions of the client are made only after the client has been informed of all relevant considerations.  As Comment 2 to the D.C. Rule 1.4 states, "A client is entitled to whatever information the client wishes about all aspects of the subject matter of the representation …." *Id.*  If enforced, the Department's new edicts would prohibit an employer's attorney from informing the employer that his lay opinion on worker qualification under the regulations is legally incorrect.  Such a ban necessarily would condemn clients to make legal decisions in ignorance of the legal rules about which they expect to receive advice from counsel.

**Aftermath of the Department's Unlawful Actions**

67.    The Department's unreasonable and unlawful actions have sparked an outcry among members of the immigration bar and informed commentators.  For example:

(a)     The American Immigration Lawyers' Association ("AILA") – the leading bar association for U.S. immigration lawyers – stated in a communication to the Secretary: "Contrary to the implication in the [the Department's announcements], attorneys are permitted to do more than simply provide general information on the meaning of 'qualified.' An intrinsic part of the right to counsel is the right to receive advice on the application of the law to specific facts. DOL cannot change this right to counsel, ingrained through decades of practice in the presence of the same regulatory language, via press release." Letter from AILA to Secretary of Labor Elaine L. Chao, June 4, 2008, available at http://www.aila.org/content/default.aspx?docid=25594.

(b)     The Association of the Bar of the City of New York, another leading bar association, has communicated similar concerns to the Secretary: "We are particularly concerned that the DOL's interpretation of the role of an attorney in the labor certification process … would deprive employers of their right to effective counsel. … The duty to counsel and advise clients is inherent in the job of an attorney, including as to the legal import of facts arising during the PERM recruitment process. Likewise the employer's regulatory and statutory right to counsel plainly extends to the PERM recruitment process, which is a highly complex process governed by detailed regulations and administrative case law." Letter from Linda Kenepaske (Chair, Immigration and Nationality Law Committee of the Association of the Bar of the City of New York) to Secretary of Labor Elaine L. Chao, July 24, 2008.

(c)     Two prominent immigration practitioners, in an article analyzing the Department's actions, asked incredulously: "What sins have the firm's attorneys allegedly committed that warrant such drastic administrative action? According to the DOL, some lawyers at the firm, heaven forbid, wrote to their clients and instructed them to consult with counsel

during a key phase of the labor certification recruitment process."  Angelo A. Paparelli & Ted J. Chiappari, "U.S. Labor Department to Immigration Lawyers:  You're All Just Potted Plants," NATIONAL LAW JOURNAL, June 23, 2008, available at http://www.entertheusa.com/publications/ 0807_article_pottedplants.pdf.

> (d)    The *American Lawyer* had similar difficulty understanding the Department's position:  "Is it really possible that a company could be violating federal law if it consults its lawyers about a hiring decision?  As bizarre as it sounds, that's the position the U.S. Department of Labor is taking in a recent action targeting the nation's largest corporate immigration firm, Fragomen, Del Rey, Bernsen & Loewy."  Susan Beck, "FOOTNOTE: The Legal Details Behind the News," AMERICAN LAWYER DAILY, June 10, 2008, available at http://amlawdaily.typepad.com/amlawdaily/2008/06/post.html.

> (e)    A column in an influential immigration publication explained: "The … DOL documents are replete with misstatements, misconstructions and outright whoppers. … The PERM rule at 20 CFR 656.10(b)(2)(i) says attorneys may not 'interview or consider' US workers, it does NOT (and cannot) prohibit attorneys from counseling employers about the proper legal procedure and standards to apply to particular applicants."  Comment, "DOL Puts Foot in Mouth," IMMIGRATION DAILY, June 5, 2008, available at http://www.ilw.com/immigdaily/digest/2008,0605.shtm#comment.  This column also explained how the Department's actions are likely to frustrate the very policy objectives that apparently motivated its recent actions:  "If DOL harasses large employers enough, they will simply move the jobs overseas.  Far from ensuring that American workers have access to jobs, DOL's actions, if continued along this trajectory, will only ensure that American jobs are destroyed.  Moving the

jobs overseas will be an inconvenience for large employers for sure, but the impact on the lives of US workers will be catastrophic." *Id.*

**The Department's Actions Are Unlawful**

68.     The Department's actions are unlawful in several respects, each of which is independently sufficient to warrant the relief sought by Fragomen here.

69.     The Department has exceeded its delegated statutory authority by purporting to restrict the substance and timing of attorney-client communications, a subject matter which traditionally has been governed by state-law professional responsibility rules.

70.     The Department's attempt to preclude employers from consulting with their lawyers about whether particular applicants meet the legal criteria for being "minimally qualified" is contrary to the plain language of the Regulation, which (a) protects the employer's right to counsel "throughout the labor certification process" and (b) does not include attorneys for employers within the scope of the prohibition contained in 20 C.F.R. § 656.10(b)(2) against involvement by the foreign national in recruiting efforts related to a labor certification.

71.     The Department's position is based in whole or in part on language in the Regulation that was added without an opportunity for notice and comment, in violation of APA rulemaking requirements (5 U.S.C. § 553).

72.     The Department's position reverses decades of recognized practices and interpretations of Department regulations that permit counsel for an employer to consult freely with the employer on all matters concerning the labor certification process. The Department now seeks to apply its new interpretation retroactively and in violation of the notice and comment provisions of the APA.

73.     The Department's interpretation of the Regulation violates well-established constitutional rights.   The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition and the Fifth Amendment's Due Process Clause.   This right includes a right to communicate with counsel about factual matters and contextual information that will facilitate the attorney's giving informed legal advice.   The right to obtain legal advice does not depend upon the purpose for which the advice is sought or on the actual advice that the attorney ultimately gives.   The First Amendment also protects an attorney's right to advise and represent clients.

74.     Federal agencies may not impose undue burdens or restrictions on the constitutional right to hire and consult an attorney, particularly a viewpoint-based restriction that is not necessary and narrowly tailored to protect a substantial government interest.   Nor may they condition eligibility for government-administered benefits on an agreement to waive the constitutional right to hire and consult with an attorney.   Nor may they penalize a party through their enforcement powers in retaliation for an exercise of constitutional rights.

75.     The Department's actions also violate the Fifth Amendment right of Fragomen to engage in its chosen business.

76.     The Department's actions thus are (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and (D) an impermissible retroactive application of new procedures and practices in violation of regulation, the statute, and the Constitution.

**Fragomen and Its Clients Face Serious, Immediate, Irreparable Harm**

77.    Fragomen and its clients have an urgent need for prompt injunctive relief in this case.

78.    The Department's unlawful interpretation of the Regulation, and the 100 percent audit policy it has applied based on its unlawful interpretation to applications handled by Fragomen, have irreparably harmed Fragomen by thwarting its ability to continue providing key services to its clients, to practice as an immigration law firm, and to uphold the requirements of the state rules of professional responsibility governing the practice of law. The Department's actions have also irreparably harmed Fragomen and its clients by depriving them of their Constitutional rights to receive and give legal advice.

79.    The Department's actions have had immediate, seriously adverse consequences for Fragomen because Fragomen has been singled out, increasing the likelihood that Fragomen clients will leave the firm and take their business to other law firms. This is likely to occur despite the fact that Fragomen's actions are not only consistent with the actions of thousands of immigration lawyers across the country, but also have been squarely within the decades-old boundaries of accepted Labor Certification (now PERM) employer conduct. The harm Fragomen faces is irreparable because of the deprivation of its First Amendment rights and its lost opportunities to provide fully informed legal advice to its clients. In addition, because of the extraordinary volume of applications (more than 2,500) that the Department has deemed subject to its sweeping audit, it is not inconceivable that the firm could be put out of business before it even has a chance to demonstrate that it committed no improper conduct, and to present its statutory and constitutional arguments to an impartial adjudicator.

80.    As a result of the Department's unlawful actions, Fragomen has lost business from clients as well as opportunities to compete for new business. Since 1951, Fragomen has enjoyed a reputation as a highly ethical firm with a compliance orientation that distinguishes its services in the marketplace. The Department's press release and accompanying negative publicity have sullied the firm's reputation worldwide.

81.    The Department's actions have jeopardized the ability of Fragomen's clients to continue realizing the important contributions that foreign national employees make to the success of their businesses. In the brief period since the Department announced its new interpretation, Fragomen has already been severely hampered in responding to legitimate client inquiries. In one case, an employer conducting PERM recruitment interviewed a U.S. applicant who could not start working for several months. The employer inquired whether the applicant was considered "available" under the regulations, but Fragomen was prevented from providing complete advice based on the Department's new interpretation. In another case, an employer interviewed a U.S. applicant who did freelance work and planned to continue such work if hired by the employer. The employer did not allow freelance work, and wanted to know whether he should nonetheless consider the U.S. applicant. Fragomen could not provide complete advice under the Department's new interpretation. In a third case, a U.S. applicant worked for a client of an employer, and the employer requested guidance about balancing agreements with clients not to poach employees against labor certification considerations. Fragomen could not provide a complete response under the Department's new interpretation. In these situations, and in countless others that will undoubtedly arise, Fragomen's clients are prevented from receiving the detailed legal advice that they need to navigate the PERM process.

82.     Fragomen and its clients face an immediate loss of their constitutional right to counsel.  In addition, PERM applications filed by Fragomen and its clients have been put into protracted limbo as a result of the new interpretation.   Fragomen and its clients face uncertainty, business injury, and competitive disadvantage as a result of the Department's actions with respect to pending PERM applications.

83.     In addition, restrictions on the ability of private plaintiffs to recover monetary damages from government agencies leave Fragomen without an adequate remedy at law.

84.     The Department's actions have thrust on Fragomen, its clients, other immigration law firms, and other employers an immediate dilemma requiring them to choose between complying with newly imposed, overly intrusive restrictions or risking serious penalties for violation of the Department's improper interpretation of its regulatory authority.

85.     The Department has indicated that it may seek debarment remedies against the firm's attorneys and the firm based on the Department's belief that Fragomen did not previously act consistently with the Department's new interpretation of the Regulation.

86.     The Department also suggested it may institute debarment proceedings or impose other sanctions on Fragomen if it fails to comply with the Department's improper requests for information about Fragomen's confidential communications and dealings with its clients.

## COUNT I

### (Agency Action in Excess of Authority)

87.     The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

88.     The Immigration and Nationality Act does not authorize the Department to regulate attorney-client communications, which traditionally have been the province of state law. Consequently, to the extent that they purport to govern the conduct of Fragomen and other attorneys in consultation with their clients, the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin, as well as the restrictions on attorney involvement stated in 20 C.F.R. § 656.10(b), are invalid and unenforceable under 5 U.S.C. § 706; and Fragomen is entitled to appropriate declaratory and injunctive relief as requested below.

## COUNT II

### (Unlawful Interpretation of Regulation)

89.     The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

90.     The Department's attempt to preclude attorney consultation about whether particular applicants meet the legal criteria for being "qualified" is contrary to the plain language of the Regulation, which (a) protects the employer's right to counsel "throughout the labor certification process" and (b) does not include attorneys for employers within the scope of the prohibition against involvement by the foreign national in recruiting efforts related to a labor certification.

91.     Thus, the Department's interpretation of the Regulation, and the actions it has taken against Fragomen and its clients based on that interpretation, violate the provisions of the Regulation and should be set aside under 20 C.F.R. § 656.10(b) and 5 U.S.C. § 706.

92.     The Department's decision to audit all of Fragomen's pending applications because of concerns about the content of Fragomen's confidential communications with its clients also violates the agency's published regulations regarding the circumstances

under which PERM applications will be "audited." The Department's published regulations require the Department to select cases either randomly, or based on "program requirements." The selection criterion announced in the June 2 Press Release – based on the identity of the attorney filing for the applicant – is not random, and is not based on any legitimate "program requirements," given that the special audit initiative was expressly premised on an interpretation of the regulations that is unlawful.

93.    To the extent the audits announced on June 2 are aimed not at the employer applicants but at Fragomen, they represent a sanction against the firm rather than an investigation of any particular applicant. The imposition of this sanction did not comply with any published regulations. The sanction was also improper in that it invaded the rights of some Fragomen clients based entirely on the agency's concerns about Fragomen's alleged conduct in wholly unrelated cases for other clients.

94.    Consequently, the agency's decision to audit all pending Fragomen applications was unlawful, and Fragomen is entitled to appropriate declaratory and injunctive relief as requested below.

## COUNT III

**(Promulgation of New Regulatory Requirements Without Notice and Comment)**

95.    The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

96.    The Department's public statements since June 2, including the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin, purport to forbid lawyers from providing certain legal services and advice to their clients. Each of these statements was

different from the one that preceded it, and all were inconsistent with the published regulations and other agency authority that previously existed.

97.    The restrictions on attorney-client consultations set forth in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin constitute purported new agency regulatory requirements, promulgated without notice and comment, in violation of the Administrative Procedure Act.

98.    In the 2002 Notice of Proposed Rulemaking, the relevant regulation, former section 656.20(b)(3)(i) and new section 656.10(b)(2)(i), was unchanged.  That provision was changed in the final rule as promulgated, but the changes to that provision were made without providing notice and an opportunity for comment.  Thus, if new section 656.10(b)(2)(i) is the source of the new requirement, then the change to the regulations, made without notice and comment, was invalid because it was made in violation of the Administrative Procedure Act.

99.    Consequently, to the extent that they purport to govern the conduct of Fragomen and other attorneys in consultation with their clients, the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin, as well as the four words referring to employers' attorneys in 20 C.F.R. § 656.10(b)(2)(i), are invalid and unenforceable, and Fragomen is entitled to appropriate declaratory and injunctive relief as requested below.  To the extent that the Department of Labor contends that the basis for the restriction is none of those sources, the change in policy is arbitrary and capricious and must be set aside, and Fragomen is entitled to appropriate declaratory and injunctive relief as requested below.

## COUNT IV

### (Arbitrary and Capricious Retroactive Application of New Rule)

100.    The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

101.    The restrictions announced in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin constitute new regulations that the Department has sought to apply retroactively to old labor certification applications, which were prepared in compliance with the settled rules and understandings that prevailed before the Department announced its new initiatives.  Such a retroactive application of new rules, through the PERM audit process and otherwise, is arbitrary and capricious and should be set aside under 5 U.S.C. § 553 and 5 U.S.C. § 706.

## COUNT V

### (Violation of First Amendment Rights)

102.    The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

103.    The Department's restrictions on the content, viewpoint and timing of attorney-client consultations violate the rights of Fragomen's clients of association, petition, and expression under the First Amendment, and the same rights of Fragomen itself in its capacity as an employer.  The restrictions also violate the corresponding rights of Fragomen as counsel to its clients.

104.    This constitutional infirmity is even more serious here because of the vagueness of the restriction and the procedural irregularities in the way it was announced, which

leave Fragomen and others in genuine doubt about which informal agency pronouncement is supposed to be authoritative and what specific conduct it is supposed to prohibit.

105.    Accordingly, to the extent the attorney-client speech restrictions announced in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin, purport to govern the conduct of Fragomen and other attorneys in consultation with their clients, the restrictions are invalid and unenforceable, and Fragomen is entitled to declaratory and injunctive relief as requested below.

## COUNT VI

### (Violation of Due Process Rights)

106.    The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

107.    The Due Process Clause of the Fifth Amendment protects the right of attorneys to engage in their chosen vocation, and the rights of parties to retain and communicate freely with counsel of their own choosing.  The Department's restrictions on the content of attorney-client consultations therefore violate the due process rights of Fragomen and its clients.

108.    As a result of the Department's actions, Fragomen suffered significant damage and is being denied the ability to continue to practice a type of law in which it has excelled for decades.

109.    Fragomen clients retain Fragomen specifically to provide legal advice and assist in the submission of applications to the Department of Labor.

110.    Fragomen's clients do not want their applications to be flagged unnecessarily for audit, because audits significantly delay the time it takes for the Department to rule on the applications.

111.    By deciding to audit each and every application on which Fragomen had provided advice, and by announcing that decision in a press release, the Department made clear to Fragomen's clients and any potential employer who might otherwise become a Fragomen client, that retaining Fragomen to assist in processing an application to the Department would automatically result in an audit of such applications, generating unwanted delay in processing.

112.    The Department's decision to audit all Fragomen-assisted applications and to publicly announce that decision deprived Fragomen of its liberty and property in violation of its due process rights contained in the Fifth Amendment to the Constitution.

113.    Accordingly, the attorney-client speech restrictions announced in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin, and the audits initiated by the Department in order to implement those restrictions, are invalid and unenforceable, and Fragomen is entitled to declaratory and injunctive relief as requested below.

## COUNT VII

### (Unlawful Retaliation Based on Exercise of Constitutional Rights)

114.    The foregoing allegations in paragraphs 1 through 86 are realleged and incorporated herein as if fully set forth below.

115.    The Department's actions in enforcing and implementing its interpretation of the Regulation constitute unlawful retaliation against Fragomen and its clients based on their exercise of constitutionally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Fragomen respectfully requests that the Court:

(a)    Enter a declaratory judgment that the Regulation, as interpreted by the Secretary, exceeds the authority delegated to the Department under the statute.

(b)    Enter a declaratory judgment that the restrictions on attorney-client consultation promulgated by the Department in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin are contrary to the Regulation, and are therefore arbitrary and capricious or otherwise contrary to law.

(c)    Enter a declaratory judgment that the Secretary's interpretation of the Regulation amounted to rulemaking without notice and comment, and is therefore arbitrary and capricious or otherwise contrary to law.

(d)    Enter a declaratory judgment that the Regulation, as interpreted by the Secretary, violates the U.S. Constitution.

(e)    Enter an order preliminarily and permanently enjoining the Secretary from:

1.    Enforcing the Regulation to prohibit employers from consulting with attorneys concerning any aspect of the labor certification process, including whether particular workers who apply for positions in the alien labor certification recruitment process are "qualified" for the position within the meaning of the governing regulations.

2.    Enforcing the Regulation to prohibit attorneys from communicating with their employer clients at the time résumés or applications are received about whether applicants may be "qualified" for the position within the meaning of the governing regulations.

3.    Enforcing the interpretations outlined in the June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin as to the permissible role of attorneys for employers in the labor certification process.

4.  Enforcing new restrictions directed at the role of attorneys for employers in the labor certification process without following the notice and comment rulemaking procedures set forth in the APA.

5.  Retaliating against Fragomen or its clients through its enforcement powers based on their exercise of constitutionally protected rights.

6.  Auditing PERM applications of Fragomen's clients based upon the Department's view of the attorney-client relationship outlined in the Department's June 2 Press Release, the June 4 Information Paper, and the June 13 Bulletin.

7.  Auditing PERM applications specifically on the basis of Fragomen's appearance as counsel for the employer.

8.  Demanding that Fragomen or its clients provide confidential information about their attorney-client relationship in the course of the labor certification process.

(f)  Enter an order directing the Secretary to rescind and reverse all implementing actions the Department has taken based on its unlawful interpretation of the Regulation, including (without limitation) its determination to place 100 percent of all of the more than 2,500 PERM applications filed by Fragomen into audit, and to process those applications without further delay.

(g)  Enter an order directing the Secretary to return to Fragomen all materials produced by Fragomen to Defendants in the audits of the PERM applications filed by Fragomen;

(h)  Award Fragomen its reasonable attorneys' fees and costs; and

(i)  Grant such other and further relief as the Court may deem just and proper.

Dated: August 8, 2008

Respectfully submitted,

COVINGTON & BURLING LLP

Thomas S. Williamson, Jr.
 D.C. Bar No. 217729
Jonathan L. Marcus
 D.C. Bar No. 451172
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 662-6000

Andrew A. Ruffino
(*Pro hac vice* application to be submitted)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000

*Of Counsel:*

Mark A. Grannis, D.C. Bar No. 429268
HARRIS, WILTSHIRE & GRANNIS LLP
1200 Eighteenth Street, N.W.
Washington, D.C. 20036
Tel: (202) 730-1300

Ira J. Kurzban
(*Pro hac vice* application to be submitted)
KURZBAN, KURZBAN, WEINGER
AND TETZELI, P.A.
2650 S.W. 27th Avenue
Miami, Florida 33133
Tel: (305) 444-3503

*Attorneys for Plaintiff*

# EXHIBIT A

# FRAGOMEN

FRAGOMEN, DEL REY, BERNSEN & LOEWY

## PERM
## APPLICANT EVALUATION FORM

**Reminder: Immediately review all resumes and contact all applicants for a phone interview who on the face of their resume are potentially qualified for the offered position. After interview, should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated for the position.**

## APPLICANT EVALUATION FORM

Applicant's Name:

Applicant's contact information:

(phone number [work/home] or email)

Labor certification Position:

Evaluator's Name:

*Contact attempts:  (note phone # attempted, date, and time):*

Evaluator's Title: _____          Evaluator's Phone:

|             | Date: | Time: | Results/Comments: |
|-------------|-------|-------|-------------------|
| 1st attempt |       |       |                   |
| 2nd attempt |       |       |                   |
| 3rd attempt |       |       |                   |
| 4th attempt |       |       |                   |

© 2005 Fragomen, Del Rey, Bernsen & Loewy. This material is copyrighted information intended for the exclusive use of Fragomen, Del Rey, Bernsen & Loewy and should not be reproduced or distributed without express permission.

# EXHIBIT B

# FRAGOMEN

### FRAGOMEN, DEL REY, BERNSEN & LOEWY

**PERM**

## APPLICANT EVALUATION FORM

**Reminder: Immediately review all resumes and contact all applicants for a phone interview. Should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated on ETA 9089.**

## APPLICANT EVALUATION FORM

Applicant's Name:

Applicant's contact information:

(phone number [work/home] or email):

Labor certification Position:

Evaluator's Name:

Evaluator's Title:                                    Evaluator's Phone:

***Contact attempts: (note phone # attempted, date, and time):***

|  | Telephone # | Date: | Time: | Results/Comments: |
|---|---|---|---|---|
| 1st attempt |  |  |  |  |
| 2nd attempt |  |  |  |  |
| 3rd attempt |  |  |  |  |
| 4th attempt |  |  |  |  |

© 2005 Fragomen, Del Rey, Bernsen & Loewy. This material is copyrighted information intended for the exclusive use of Fragomen, Del Rey, Bernsen & Loewy and should not be reproduced or distributed without express permission.
Rev. 8/4/05

# EXHIBIT C

# Labor Certification – Resume Review Form

**Instructions:** Upon receipt of a resume in connection with the advertised/posted position, please review the resume immediately and complete an evaluation form for each resume received. Please attach a completed form to each resume received.

| | | | |
|---|---|---|---|
| **Employer:** | | **Candidate/Applicant Name:** | |
| **Position:** | | **Evaluator's Name:** | |
| **Job Code (if any):** | | **Evaluator's Title:** | |
| **Job Loc.:** | | **Evaluator's Phone No:** | |
| **Salary: :** | | **Evaluator's Signature:** | |
| **Alien Beneficiary:** | | **Today's Date: .** | |

**Job Duties:**
Responsible for the system level integration test plan development, enhancement, execution, troubleshooting, optimization and problem resolution on 2G/3G (UMTS) mobile devices. Work with a multi-discipline team to test and commercialize UMTS solutions. Actively be involved in producing requirements for tools and system simulators and work closely with technology teams and test equipment vendors to come up with the appropriate test set ups and associated automation. Close interaction required with the modem stack, multi-media, RF, drivers, 3GPP standard representatives and system design engineers to ensure test coverage and feedback on change requests. In depth debugging of UMTS protocol stack. Exposure to UMTS test simulators and test systems such as Anite, R&S, Racal, Anritsu and Agilent.

| **Degree/Field of Study Requirements:** | **Experience Requirements:** | **Special Requirements:** |
|---|---|---|
| | | |

## STEP ONE: RESUME REVIEW

**On the face of the resume, does the applicant appear qualified for the position (i.e., does the applicant possess the education and experience required to perform the duties of the position)?**

| If **YES**, please follow arrow below to the interview section and conduct an interview (phone or in person).<br><br>If you cannot conclude whether the applicant qualifies for the position or can perform the job duties, please follow arrow below to the interview section and conduct an interview (phone or in person). | If **NO**, conclude review by specifically stating here which of the minimum requirements (education and/or experience) the applicant does not possess. If applicable, please specifically state here any reasons the applicant cannot perform the job duties:<br><br>The candidate does not meet the special requirements. Gerry does not have any experience with UMTS and GSM/GPRS/EDGE. |
|---|---|

## STEP TWO (if applicable): INTERVIEWING THE APPLICANT

| **Applicant's Name:** | **Applicant's Phone Number(s):** |
|---|---|
| Interview by phone/in person (circle one) | Date interview conducted: |

Please indicate contact attempts (date/time):

| 1. | 2. | 3. | 4. |
|---|---|---|---|
| | | | |

If unable to contact applicant after four attempts, please contact FDBL.

**Interview Process:**
1. Please ask the applicant the following yes or no question, "Are you one of the following: citizen or national of the United States, Lawful Permanent Resident, Special Agricultural Worker, Legalization (amnesty) Applicant, Refugee or Asylee?"
2. If "**no**" to # 1 above, please state, "I am sorry but we are currently only considering U.S. workers for this position. However, we will keep your resume on file. Thank you."
3. If "**yes**" to # 1 above, please continue with the interview process and determine whether the applicant possesses the minimum requirements (education, experience and/or special requirements) for the position, and determine if the applicant can perform the duties of the position.

**Closing the interview:** If the applicant meets the requirements and is still interested in the position after the interview (including location and salary), tell applicant that the company will contact him/her after considering the application (contact FDBL immediately). If, however, the applicant is no longer interested in the position after the interview or, you determine that the applicant does not meet the requirements or is unable to perform the job duties, please provide specific reasons here:

# FRAGOMEN

FRAGOMEN, DEL REY, BERNSEN & LOEWY

# PERM
# APPLICANT EVALUATION FORM

**Reminder: Immediately review all resumes and contact all applicants for a phone interview who on the face of their resume are potentially qualified for the offered position. After interview, should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated for the position.**

## APPLICANT EVALUATION FORM

Applicant's Name:

Applicant's contact information:

(phone number [work/home] or email)

Labor certification Position:

Evaluator's Name:

***Contact attempts:  (note phone # attempted, date, and time):***

Evaluator's Title: _____            Evaluator's Phone:

|             | Date: | Time: | Results/Comments: |
|-------------|-------|-------|-------------------|
| 1st attempt |       |       |                   |
| 2nd attempt |       |       |                   |
| 3rd attempt |       |       |                   |
| 4th attempt |       |       |                   |

© 2005 Fragomen, Del Rey, Bernsen & Loewy. This material is copyrighted information intended for the exclusive use of Fragomen, Del Rey, Bernsen & Loewy and should not be reproduced or distributed without express permission.

# FRAGOMEN

FRAGOMEN, DEL REY, BERNSEN & LOEWY

## PERM

## APPLICANT EVALUATION FORM

**Reminder:** Immediately review all resumes and contact all applicants for a phone interview. Should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated on ETA 9089.

## APPLICANT EVALUATION FORM

Applicant's Name:

Applicant's contact information:

(phone number [work/home] or email):

Labor certification Position:

Evaluator's Name:

*Contact attemps: (note phone # attempted, date, and time):*

Evaluator's Title:                                    Evaluator's Phone:

| | Telephone # | Date: | Time: | Results/Comments: |
|---|---|---|---|---|
| 1st attempt | | | | |
| 2nd attempt | | | | |
| 3rd attempt | | | | |
| 4th attempt | | | | |

© 2005 Fragomen, Del Rey, Bernsen & Loewy. This material is copyrighted information intended for the exclusive use of Fragomen, Del Rey, Bernsen & Loewy and should not be reproduced or distributed without express permission.
Rev. 8/4/05

# EXHIBIT D



# U.S. Department of Labor

## News Release

⬇ Printer-Friendly Version

**ETA News Release: [06/02/2008]**
**Contact Name: Terry Shawn or Jennifer Kaplan**
**Phone Number: (202) 693-4676 or x5052**
**Release Number: 08-0752-NAT**

## U.S. Department of Labor auditing all permanent labor certification applications filed by major immigration law firm

### *Department acts to protect employment opportunities for American workers*

**WASHINGTON** — The U.S. Department of Labor today announced that it has begun auditing all permanent labor certification applications filed by attorneys at Fragomen, Del Rey, Bernsen & Loewy LLP. The department has information indicating that in at least some cases the firm improperly instructed clients who filed permanent labor certification applications to contact their attorney before hiring apparently qualified U.S. workers. The audits will determine which, if any, applications should be denied or placed into department-supervised recruitment because of improper attorney involvement in the consideration of U.S. worker applicants.

"The department's decision to further investigate these applications will help ensure the integrity of the permanent labor certification process and ultimately protect job opportunities for American workers," said Gregory F. Jacob, solicitor of labor. "The department takes seriously its responsibility to ensure that American workers have access to jobs they are qualified and willing to do and that their wages and working conditions are not adversely affected by the hiring of foreign workers."

The permanent labor certification process, established by the Immigration and Nationality Act, allows employers to sponsor aliens for permanent residence (secure a "green card") to fill positions for which no qualified, willing and available U.S. workers can be found. The department's regulations set forth detailed procedures by which an employer seeking certification must demonstrate that no qualified U.S. workers can be located.

The department's regulations specifically prohibit an employer's immigration attorney or agent from participating in considering the qualifications of U.S. workers who apply for positions for which certification is sought, unless the attorney is normally involved in the employer's routine hiring process. Where an employer does not normally involve immigration attorneys in its hiring process, there is no legitimate reason to consult with immigration attorneys before hiring apparently qualified U.S. workers who have responded to recruitment required by the permanent labor certification program.

In 2004, the department adopted reforms streamlining the permanent labor certification process by moving to an attestation-based system. Audits of applications are one of the major deterrents used by the department to ensure program integrity.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USA-DOL**
TTY: 1-877-889-5627
**Contact Us**

# EXHIBIT E

# Information Paper

| | |
|---|---|
| U.S. Department of Labor | For Immediate Release |
| Office of Public Affairs | June 4, 2008 |
| Washington, D.C. | Contact:  Terry Shawn        Jennifer Kaplan |
| Release Number: 08-775-NAT | Phone:    202-693-4676    202-693-5052 |

## Frequently asked questions on audit of permanent labor certification applications filed by attorneys at Fragomen, Del Rey, Bernsen & Loewy LLP

### (1) Why are we doing this?

The U.S. Department of Labor has a statutory responsibility to ensure that foreign workers are not hired to fill jobs where qualified, able and willing U.S. workers are available.  To fulfill this responsibility, the Department requires employers to recruit for U.S. workers before foreign workers can be hired for permanent positions, and to attest to the Department in their applications that the job opportunity has been and is clearly open to U.S. workers and that any U.S. workers who applied for the job opportunity were rejected for lawful job-related reasons.  Audits of applications are one of the major tools the Department uses to ensure program integrity.

The Department's regulations specifically prohibit an employer's immigration attorney or agent from participating in considering the qualifications of U.S. workers who apply for positions for which certification is sought, unless the attorney is normally involved in the employer's routine hiring process. Where an employer does not normally involve immigration attorneys in its hiring process, there is no legitimate reason to consult with immigration attorneys before hiring apparently qualified U.S. workers who have responded to recruitment required by the permanent labor certification program.  The Department's rule safeguards against the use of attorneys to find reasons not to hire U.S. workers that the employer would, but for the attorney's involvement, deem qualified.  The rule applies only to consideration of particular applicants, and does not bar employers from seeking general advice on the meaning of "qualified" in the context of a labor certification application.

The Department is auditing all employer applications filed by attorneys at Fragomen, Del Rey, Bernsen & Loewy LLP because it has information indicating that in at least some cases the firm may have improperly instructed clients who filed permanent labor certification applications to contact their attorney before hiring apparently qualified U.S. workers.

### (2) What incident/incidents prompted this audit?

The Department identified information indicating that in at least some cases the firm may have improperly instructed clients who filed permanent labor certification applications to contact their attorney before hiring apparently qualified U.S. workers.  Specifically, several recruitment forms drafted by some Fragomen attorneys instructed their clients that "After interview, should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated for said position," or some variation thereof.

### (3) How unusual is this type of audit?

Audits of applications are one of the major tools the Department uses to ensure program integrity.  Audits are conducted regularly.  Where the Department identifies an employer or attorney that appears to have a practice that violates the program's rules, the Department has authority to audit all applications submitted by that employer or attorney/agent to determine which, if any, were affected by the unlawful practice.

### (4) Are the audits a form of punishment?

Audits are not a punishment.  Audits are used by the Department to thoroughly examine applications to ensure that all program requirements have been properly followed. They are routine and regularly undertaken to ensure program integrity.                                    # # #

U.S. Department of Labor releases are accessible on the Internet at www.dol.gov.  The information in this news release will be made available in alternate format (large print, Braille, audio tape or disc) from the COAST office upon request.  Please specify which news release when placing your request at 202-693-7828 or TTY 202-693-7755.  The Labor Department is committed to providing America's employers and employees with easy access to understandable information on how to comply with its laws and regulations.  For more information, please visit www.dol.gov/compliance.

# EXHIBIT F

**U.S. Department of Labor Employment and Training Administration,**
**Office of Foreign Labor Certification**
**PERM Program Guidance Bulletin on the Clarification of Scope of Consideration**
**Rule in 20 CFR 656.10(b)(2)**

The Department of Labor has a statutory responsibility to ensure that no foreign worker (or "alien") is admitted for permanent residence based upon an offer of employment absent a finding that there are not sufficient U.S. workers who are able, willing, qualified and available for the work to be undertaken and that the admission of such worker will not adversely affect the wages and working conditions of U.S. workers similarly employed. 8 U.S.C. 1182(a)(5)(A)(i). The Department fulfills this responsibility by determining the availability of minimally qualified domestic workers before approving a permanent labor certification application and by ensuring that U.S. workers are fairly considered for all job opportunities that are the subject of a permanent labor certification application. Accordingly, the Department relies on employers who file labor certification applications to recruit and consider U.S. workers in good faith, even if the employer already has a temporarily-admitted foreign national occupying the position.

The Department has long held the view that good faith recruitment requires that an employer's process for considering U.S. workers who respond to certification-related recruitment closely resembles the employer's normal consideration process. In most situations, that normal process does not involve a role for an attorney or agent (as defined in 20 C.F.R. 656.3) in assessing the ability of applicants to fill the employer's needs. It also does not involve any role for the foreign worker or foreign national in any aspect of the consideration process. However, given that the permanent labor certification program imposes recruitment standards on the employer that may deviate from the employer's normal standards of evaluation, the Department understands and appreciates the legitimate role attorneys and agents play in the permanent labor certification process, and respects the right of employers to consult with their attorney or agent during that process to ensure they are complying with all applicable legal requirements.

By prohibiting attorneys, agents, and foreign workers from interviewing and considering U.S. workers during the permanent labor certification process, as described in 20 C.F.R. 656.10 (b)(2)(i) and (ii), the Department does not thereby prohibit attorneys and agents from performing the analyses necessary to counsel their clients on legal questions that may arise with respect to this process. The employer, and not the attorney or agent, must determine whether a U.S. applicant's credentials meet the minimum qualifications for the position, unless the attorney or agent is the representative of the employer who routinely performs this function for positions for which labor certifications are not filed. After an employer evaluates a U.S. worker and concludes that the worker is unqualified, the employer may seek the advice of its attorney or agent to ensure that its reasons for rejecting the U.S. worker are lawful, and the attorney or agent may review the qualifications of the U.S. worker to the extent necessary to provide that advice. By contrast, if an employer evaluates a U.S. worker and determines that the worker is minimally qualified, the attorney, agent, or foreign worker may not thereafter consider the applicants' qualifications and attempt to substitute his or her own judgment for that of

the employer. In the Department's view, an employer's determination that a U.S. worker is minimally qualified for a position constitutes clear evidence that there are U.S. workers who are able, willing, qualified and available for the work to be undertaken.

More specifically, the types of actions prohibited by 20 C.F.R. 656.10(b)(2)(i) and (ii) include:

- Attorneys and agents may receive resumes and applications from U.S. workers who respond to the employer's recruitment efforts; however, they may not conduct any preliminary screening of applications before the employer does so, unless the attorney or agent is the representative of the employer who routinely performs this function for positions for which labor certifications are not filed. The attorney or agent may not withhold from the employer any resumes or applications that it receives from U.S. workers.

- Attorneys and agents may not participate in the interviewing of U.S. worker applicants, unless the attorney or agent is the representative of the employer who routinely performs this function for positions for which labor certifications are not filed. Such involvement, because of its uniqueness, has resulted in an impermissible "chilling effect" on the interests of U.S. worker-applicants in the position.

- After the evaluation of applications by the employer has been completed, the employer may consult with its attorney or agent about the implications of its qualification determinations on the labor certification application. Those consultations can encompass the question of whether applicants who were found by the employer to be unqualified were rejected for lawful, job related reasons. Under no circumstances, however, should an attorney or agent seek to dissuade an employer from its initial determination that a particular applicant is minimally qualified, able, willing and available for the position in question.

Where the Department finds evidence of potentially improper attorney, agent, or foreign worker involvement in considering U.S. worker applicants, the Department may audit applications to determine whether the employer's recruitment and hiring processes were conducted in good faith and to ensure adherence to all statutory and regulatory requirements.

# EXHIBIT G

AGREEMENT made this 14th day of July 2008, by and between the U.S. Department of Labor (the Department) and Fragomen, Del Rey, Bernsen & Loewy, LLP (Fragomen).

WHEREAS, the Department is currently auditing all permanent labor certification applications filed by Fragomen because the Department received information indicating that applications filed by Fragomen may in some instances not have complied with the Department's permanent labor certification regulations at 20 CFR 656.10(b)(2).

WHEREAS, Fragomen believes it is critical for its survival to ensure that future applications it files on behalf of clients will not automatically be designated for audit, and that the Department will not automatically treat applications filed by Fragomen differently from applications filed by other law firms that are not otherwise under some kind of restriction, such as supervised recruitment by the Department.

WHEREAS, Fragomen and the Department do not agree on the proper legal interpretation of the PERM regulations as they may relate to the participation of counsel in the recruitment and application process.

WHEREAS, notwithstanding that continuing disagreement and while reserving every legal and equitable right to assert what it believes to be the proper interpretation of those regulations, Fragomen respects the authority of the Department and is willing to enter into the agreement set forth below so that it can continue to file labor certification applications on behalf of clients without concern that all such applications will be designated automatically for audit.

THEREFORE, in consideration of the mutual undertakings herein contained, the parties hereto agree as follows:

1. Fragomen confirms that it has discontinued the use of recruitment forms (the "Forms") containing language stating to clients that: "After interview, should any of the applicants appear to be qualified for the position, please contact a Fragomen attorney immediately to further discuss the candidate's background as it relates to the requirements stated for the position," or some variation thereof (the "Language").

2. Fragomen represents that in communicating with and advising its clients in connection with the Department's labor certification application process, Fragomen will comply with the Department's labor certification regulations, including the PERM regulation codified at 20 C.F.R. 656.10(b)(2). Fragomen further agrees that, until further written notice to the Department or until such time as a judicial determination is rendered as to the proper interpretation of 20 C.F.R. 656.10(b)(2)(i) and (ii), Fragomen will comply with the Department's interpretation of the relevant regulations as set forth in the Department's June 13, 2008 PERM Program Guidance Bulletin on the Clarification of Scope of Consideration Rule in 20 C.F.R. 656.10(b)(2).

3.  Fragomen will not conduct any preliminary screening of applications or resumes before a client's hiring staff does so, other than routine clerical or ministerial organizing of resumes which does not include and is not based on any assessment of, or comments on, the qualifications of any applicants.

4.  Fragomen will not withhold from a client's hiring staff any resumes or applications of U.S. workers, unless Fragomen is the representative of that client that routinely performs this function for positions for which labor certification applications are not filed.

5.  Fragomen will not participate in the interviews of any U.S. worker applicants, unless Fragomen is the representative of that client that routinely performs this function for positions for which labor certification applications are not filed.

6.  Fragomen will not attempt to dissuade a client from the client's initial determination that a particular applicant is qualified, able, willing, and available for a position for which the client is considering applying for a labor certification.

7.  In consideration of Fragomen's representations in Paragraphs 1 through 6 above, the Department agrees that, beginning on the date of this agreement and thereafter for as long as this agreement remains in force, the Department will not designate for audit any permanent labor certification applications filed by Fragomen solely because of the Language in the Forms described in paragraph 1 above or because the application was filed by Fragomen, absent an independent basis for auditing the application. The Department reserves the right to audit any permanent labor certification application filed by Fragomen if the Department finds other evidence indicating non-compliance with the Department's permanent labor certification regulations.

8.  The parties agree that this agreement does not limit the Department's authority to conduct audits in accordance with its established audit procedures, Fragomen's obligation to respond to existing audits or Fragomen's right to assert any legal or factual position or defense in connection with the audits or any individual audit, any appeal from the result of any audit or any other application for judicial review of or relief from the audits or any individual audit.

9.  Fragomen will communicate the terms of this agreement to all Fragomen personnel promptly upon its execution. Fragomen will also apprise all clients for whom Fragomen is engaged to assist in a PERM recruitment and/or labor certification application that it will not, during the pendency

2

of this agreement, perform any services for the client which it agrees
herein it will not perform.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and
year first above written.

U.S. Department of Labor                    Fragomen, Del Rey, Bernsen & Loewy, LLP

By:                                         By:    Austin T. Fragomen, Jr.

effective 7-16-08

3

# EXHIBIT H

**CERTIFICATIONS REGARDING ATTORNEY, EMPLOYEE OF ATTORNEY, OR AGENT PARTICIPATION IN THE CONSIDERATION OR INTERVIEW OF U.S. WORKER APPLICANTS**

A.  PURPOSE

The Department of Labor (the Department) is currently auditing all permanent labor certification applications filed by Fragomen, Del Rey, Bernsen & Loewy, LLP (Fragomen) through July 15, 2008, because of information indicating that applications filed by Fragomen may not have complied with the Department's permanent labor certification regulations at 20 CFR 656.10(b)(2).  The Department is aware, however, that the recruiting practices of permanent labor certification program users vary widely, and that Fragomen clients may use recruiting procedures that are in full compliance with 20 CFR 656.10(b)(2).

[EMPLOYER] is attaching in Appendix A a list of all pending applications, including case numbers, with respect to which it is not making the certifications described in Paragraph B.  These applications will remain in audit and shall be processed in accordance with existing review procedures based on each application's priority date.

[EMPLOYER] is attaching in Appendix B a list of those pending applications, including case numbers, with respect to which it is making all of the certifications described in Paragraph B.  The Department will cancel consideration-rule specific audits for applications listed in Appendix B, except that the Department will retain in audit 20% of such applications (or a minimum of three, whichever is greater), to be selected at the sole discretion of the Department.  Applications filed through July 15, 2008, that were audited for reasons unrelated to consideration rule concerns will remain in audit.  All applications that remain in audit shall be processed in accordance with existing review procedures based on each application's priority date.  Applications released from audit pursuant to this certification may later be audited for reasons other than consideration rule concerns as they are processed in accordance with the Department's normal review procedures.

B.  EMPLOYER CERTIFICATIONS:

By virtue of my signature below, I hereby certify the following with respect to the applications listed in the attached Appendix B:

1.  No attorney, employee of an attorney, or agent conducted any preliminary screening of applications or resumes before [EMPLOYER'S] hiring staff did so, other than routine clerical or ministerial organizing of resumes which did not include any assessment of, or comments on, the qualifications of any applicants.

2.  No attorney, employee of an attorney, or agent withheld from [EMPLOYER'S] hiring staff any resumes or applications that the attorney, employee of an attorney, or agent received from U.S. workers, unless that individual is the representative of [EMPLOYER] who routinely performs this function for positions for which labor certification applications are not filed.

3.  No attorney, employee of an attorney, or agent participated in the interviews of any U.S. worker applicants, unless that individual is the representative of [EMPLOYER] who routinely performs this function for positions for which labor certification applications are not filed.

4.  No attorney, employee of an attorney, or agent attempted to dissuade [EMPLOYER] from its initial determination that a particular applicant is qualified, able, willing, and available for the position in question.

5.  [EMPLOYER] has submitted or will submit to the Department all recruitment evaluation forms provided by Fragomen for the employer's use in the recruitment process, and will identify any applications with respect to which such recruitment evaluation forms were provided or used.

I understand that willfully providing false or inaccurate information in applying for permanent labor certification is grounds for debarment, in accordance with 20 CFR 656.31(f).

I understand that to knowingly furnish false information in this certification is a federal offense punishable by a fine or imprisonment up to five years or both. (18 USC 1001).

I understand that a false certification shall void the terms of the certification.

I make this certification to the best of my knowledge and belief and based on information reasonably available to me.


[EMPLOYER]


_____          _____
[Name, Title]                            Date

08-1387
RMU

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| FRAGOMEN, DEL REY, BERNSEN & LOEWY LLP _11001_ | ELAINE L. CHAO, Secretary of Labor, and the U.S. DEPARTMENT OF LABOR, |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** ___11001___
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Thomas S. Williamson, Jr.
Jonathan L. Marcus
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 662-6000

ATTORNEYS (IF KNOWN)
Gregory
Solicitor
U.S. D
200 Co
Washi
(202)

Case: 1:08-cv-01387
Assigned To : Urbina, Ricardo M.
Assign. Date : 8/8/2008
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

Ⓟ

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**◉ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)       OR       ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

14

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** <br> (if Privacy Act) <br><br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** <br> (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities- Employment** <br> ☐ **446 Americans w/Disabilities- Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** <br> (if Voting Rights Act) |

**V. ORIGIN**

○ **1 Original Proceeding** ○ **2 Removed from State Court** ○ **3 Remanded from Appellate Court** ○ **4 Reinstated or Reopened** ○ **5 Transferred from another district (specify)** ○ **6 Multi district Litigation** ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

To enjoin the US Dep't of Labor from actions purporting to implement Immigration and Naturalization Act § 212(a)(5) and the regulations thereunder.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** n/a    Check YES only if demanded in complaint **JURY DEMAND:**    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  August 8, 2008    SIGNATURE OF ATTORNEY OF RECORD  *Thomas L. Williamson, Jr.*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.